UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROHM G.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C19-434 RAJ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff seeks review of the denial of his application for Disability Insurance Benefits. Plaintiff contends the ALJ erred by rejecting his testimony and several medical opinions, and erred in determining his residual functional capacity. Dkt. 17, 19. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 58 years old, has at least a high school education, and has no past relevant work. Dkt. 15, Admin. Record (AR) 60. Plaintiff applied for benefits in November 2011, alleging disability beginning November 4, 2008. AR 119. He later amended the alleged onset date to June 30, 2010. AR 79. Plaintiff's applications were denied initially, on reconsideration, and in a 2013 ALJ decision. AR 130, 131, 25-42. On appeal to this court, the

2013 decision was reversed for failure to properly consider the opinions of two state agency nonexamining psychologists and remanded for further administrative proceedings. AR 687-98. On remand, after the ALJ conducted hearings in May 2016 and January 2018, the ALJ issued a decision finding Plaintiff not disabled. AR 613, 629, 595-606.

## THE ALJ'S DECISION

Plaintiff's date last insured was December 31, 2011. Using the five-step disability evaluation process,[1] the ALJ found that for the relevant period from June 2010 through December 2011:

**Step one:** Plaintiff engaged in substantial gainful activity throughout the period and was therefore not disabled. In the alternative, the ALJ continued with the sequential disability evaluation.

**Step two:** Plaintiff had the following severe impairments: major depressive disorder and generalized anxiety disorder.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC):** Plaintiff could perform work at all exertional levels. He could perform simple, routine tasks and follow short, simple instructions. He could perform simple duties that could be learned on-the-job in a short period and required little or no judgment. He had an average ability to maintain attention, concentration, persistence, and pace within employers' customary tolerances. He could handle supervisor contact that was minimal, *i.e.*, not occurring regularly. This did not preclude being in proximity to supervisors or simple, superficial exchanges. Plaintiff could work in proximity to a few coworkers but not in a cooperative or team effort. He could not deal with the public as an essential element of the work process, but incidental, superficial contact was not precluded. Plaintiff required a predictable work environment with few work setting changes.

**Step four:** Plaintiff had no past relevant work.

**Step five:** Because jobs exist in significant numbers in the national economy that Plaintiff could have performed, he was not disabled.

---

[1] 20 C.F.R. § 404.1520.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

AR 599-606. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 585-86.

**DISCUSSION**

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

**A.     Step One**

Plaintiff received a subsidy of $750 per month in rent reduction in exchange for "being an onsite contact person" at the rental complex. AR 85, 229. He used money from his mother to pay the balance of his rent, which was over $1300. AR 85. The ALJ, however, found that

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 3

Plaintiff received "free rent" that exceeded the substantial gainful activity level of $1000 per month. AR 599. The Commissioner concedes that the ALJ erred at step one, and thus this Court must review the ALJ's evaluation at later steps in the disability evaluation process. Dkt. 18 at 6.

**B.      Medical Opinions**

A treating physician's opinion is generally entitled to greater weight than an examining physician's opinion, and an examining physician's opinion is entitled to greater weight than a nonexamining physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). An ALJ may only reject the uncontradicted opinion of a treating or examining doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.* The ALJ can meet this standard by providing "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citation omitted). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

**1.      State Agency Nonexamining Psychologists**

In April 2012, Jan L. Lewis, Ph.D., reviewed Plaintiff's medical records and opined that he was "[m]oderately limited" in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms, further explaining that he was "likely to have occ[asional] interruptions from [psychologically] based s[ymptoms] during work week impeding his ability to work at a consistent pace…." AR 126. In February 2013, James Bailey, Ph.D., reviewed Plaintiff's medical records and concurred in Dr. Lewis' opinions. AR 139.

"Occasionally," when used by the Social Security Administration to describe the frequency of tasks performed during a work day, means "occurring from very little up to one-third of the time," or "no more than about 2 hours of an 8-hour workday." Social Security Ruling 96-9p, 1996 WL 374185 at *3 (S.S.A. 1996). The ALJ's 2013 decision rejected any inference that Dr. Lewis' and Dr. Bailey's opinions used "occasional" to mean up to one-third of the time. AR 36-37. On the first appeal to this court, the court concluded the ALJ improperly based his decision on his own expertise, "rather than that of the two psychologists." AR 693. On remand, the ALJ attempted to obtain testimony from both Dr. Lewis and Dr. Bailey, and successfully procured Dr. Lewis' testimony at the January 2018 hearing. AR 595, 629. When asked what she meant by "occasional" in the disputed sentence, Dr. Lewis testified that "[i]n the sentence occasional would mean it was not a persistent chronic day to day, hour by hour condition[,] that it would be hit and miss." AR 637. When asked, "Have you ever heard occasional being defined as one third of a workday?" Dr. Lewis replied, "No." AR 638. In his 2018 decision, the ALJ relied on Dr. Lewis' testimony to conclude that "neither Dr. Lewis nor Dr. Bailey intended to use the word, 'occasional,' to mean up to 1/3 of the time." AR 603.

Plaintiff argues that it is "pure speculation" to conclude based on Dr. Lewis' testimony that Dr. Bailey also did not use "occasional" to mean up to one-third of the time. Dkt. 17 at 14. The Court disagrees. Dr. Lewis and Dr. Bailey were both psychologists performing the same role for the same agency, and presumably had the same training, if any, on agency terminology. Dr. Lewis testified that she was not aware that the agency uses "occasional" to mean one-third of the time in certain contexts, and it was reasonable to infer that Dr. Bailey was not either. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the

record."). The ALJ did not engage in speculation, but reasonable inference, concluding that "occasional" was "used with its ordinary, dictionary meaning of 'on an infrequent basis' or … *very little of the time*." AR 604 (emphasis in original).

The Court concludes that Plaintiff has not shown error in the ALJ's handling of Dr. Lewis' and Dr. Bailey's opinions.

### 2. Robert Parker, Ph.D.

Dr. Parker examined Plaintiff in August 2009 and opined that he had a severe limitation in responding appropriately to normal pressures and expectations, and marked limitations in performing routine tasks, relating appropriately to coworkers and supervisors, and maintaining appropriate behavior. AR 512. Dr. Parker opined that these limitations would last six months, and that Plaintiff's prognosis for employability was "Fair to Good with treatment." AR 513.

The ALJ accepted Dr. Parker's opinion that Plaintiff's impairments would not last longer than six months, but gave his remaining opinions "little to no weight." AR 38-39.[3] The ALJ found Dr. Parker's minimal clinical findings did not support his opinions of extreme limitations. AR 38. Incongruity between a treating physician's opinions and her own medical records is a "specific and legitimate reason for rejecting" the opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "For example," the ALJ noted, Dr. Parker scored Plaintiff on orientation, immediate and delayed memory, attention, naming objects, repeating a phrase, and following a three-step command, giving Plaintiff a "near perfect" score of 29 out of 30. AR 38 (citing AR 518). In addition, Dr. Parker reported normal appearance, alertness, attitude, stream of thought, thought content, insight, judgment, and abstract reasoning, and an absence of hallucinations or

---

[3] The ALJ in his 2018 decision adopted his 2013 analysis of Dr. Parker's opinions. AR 596. Accordingly, the Court reviews this portion of the 2013 ALJ decision.

irritability/anger. AR 517. Plaintiff's speech showed normal volume and clear expression, but was "mildly slow." AR 517. The only other abnormalities reported were lethargic motor activity, blunted affect, depressed and discouraged mood, and insomnia. AR 517. The ALJ did not err by concluding that these mild findings did not support Dr. Parker's extreme opinions.

Plaintiff argues that Dr. Parker's opinions are not extreme, because other evaluators also opined Plaintiff would have difficulty in the workplace. Dkt. 17 at 11. Regardless, the ALJ provided a specific and legitimate reason to discount Dr. Parker's opinions, and therefore discounting them was permissible.

The Court concludes the ALJ did not err by discounting Dr. Parker's opinions.

**3. Paul Grekin, M.D., and Robert L. Curtis, MHP, LMHC**

In November 2010, Plaintiff began counseling at Seattle Counseling Service, where Dr. Grekin and Mr. Curtis worked. AR 484. In January 2011, Dr. Grekin performed a Psychiatric Intake Evaluation. AR 484-86. Mr. Curtis began counseling Plaintiff in early 2011, continuing through at least September 2014. AR 584. In September 2013, Dr. Grekin and Mr. Curtis both signed a Mental Residual Functional Capacity Assessment form opining that Plaintiff was markedly limited in maintaining concentration and attention, maintaining punctual attendance, and completing a normal work day and work week without unreasonable breaks. AR 580-81. In September 2014, Mr. Curtis opined that Plaintiff "would not be able to sustain a full time pace of work" and would be absent "3-5 times a month or more." AR 584. The ALJ rejected these opinions as inconsistent with the medical evidence. AR 39, 40.[4] Plaintiff does not challenge this

---

[4] In his 2018 decision, the ALJ adopted his 2013 analysis of Dr. Grekin's and Mr. Curtis' 2013 opinions, and discounted Mr. Curtis' September 2014 opinions "for the same reasons noted for Mr. Curtis' August 2013 opinion." AR 604, 596. Accordingly, the Court reviews these portions of the 2013 ALJ decision.

specific and legitimate reason, but contends the ALJ erred in characterizing Dr. Grekin's and Mr. Curtis' roles. *See Batson*, 359 F.3d at 1195 (that opinions were "contradicted by other statements and assessments of [claimant's] medical conditions" and "conflict[ed] with the results of a consultative medical evaluation" were specific and legitimate reasons to discount the opinions).

Plaintiff argues that the ALJ erred by failing to consider Mr. Curtis an acceptable medical source. "Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. § 404.1502(a), (d), (e). An ALJ may reject the opinion of a non-acceptable medical source, such as a therapist, by giving reasons germane to the opinion. *Id.* Plaintiff asserts that Mr. Curtis "worked closely with and under the supervision of Dr. Grekin" and therefore should be considered an acceptable medical source. Dkt. 17 at 12 (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011)).[5] Plaintiff offers no support for this assertion. The fact that Mr. Curtis and Dr. Grekin signed the same assessment form does not establish that Dr. Grekin closely supervised Mr. Curtis' work with Plaintiff. Mr. Curtis' treatment notes reflect no interaction with, or even mention of, Dr. Grekin. *See*, *e.g.*, AR 492-97. The ALJ did not err by failing to consider Mr. Curtis an acceptable medical source.

---

[5] The court in *Taylor* held that, "[t]o the extent nurse practitioner Wrona-Sexton was working closely with, and under the supervision of, Dr. Thompson, her opinion is to be considered that of an 'acceptable medical source.'" 659 F.3d at 1234 (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)). The continuing validity of this holding is questionable, because the supporting regulatory section has been repealed. *See Molina*, 674 F.3d at 1111 n. 3. Regardless, the holding is inapplicable here because there is no evidence Mr. Curtis worked under Dr. Grekin's close supervision.

Plaintiff also argues that the ALJ "appears to not consider Dr. Grekin a treating physician." Dkt. 17 at 11. The ALJ recognized Dr. Grekin as a physician, referring to him as "M.D." AR 40. But Plaintiff points to no evidence that Dr. Grekin treated him. The record reflects only an intake evaluation. The ALJ did not err by failing to consider Dr. Grekin a treating physician.

Finally, Plaintiff argues that Dr. Grekin and Mr. Curtis together were a "treatment team" and had a "joint long-time treating relationship with" Plaintiff. Dkt. 17 at 11. Mr. Curtis was a treating provider and Dr. Grekin was a physician. But the fact that they both signed one assessment form does not conjoin them into a treating physician.

The Court concludes the ALJ did not err by discounting Dr. Grekin's and Mr. Curtis' opinions.

**C.     Plaintiff's Testimony**

In a 2012 Function Report, Plaintiff stated that he "can't think straight or concentrate on tasks." AR 236. At the 2013 hearing, Plaintiff testified that after social activities such as bicycle riding or going to a festival, he must recuperate for one to three days. AR 93. He has cycles of improvement and decline, and at times he may feel nearly normal for a day to a week. AR 95-96. Most of the time, he has trouble even with simple cleaning, unloading his dishwasher, watering his house plants, bathing, or shopping for food. AR 96-98. He may spend the entire day in bed or on the couch. AR 99.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by

substantial evidence. *Trevizo*, 871 F.3d at 678. The ALJ discounted Plaintiff's testimony on the grounds that it conflicted with his activities, evidence his impairments improved with treatment, and objective medical evidence.[6] AR 33-35.[7]

**1.  Activities**

An ALJ may discount a claimant's testimony based on daily activities that contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ found Plaintiff's testimony inconsistent with "contemporaneous reports of actual functioning." AR 33. The ALJ noted that Plaintiff flew to Wyoming for seven days to visit his mother, which required hours-long flights and maintaining appropriate behavior with people in the airport and on the airplane. AR 32. The ALJ also cited going to a coffee shop regularly and the gym one to three times per week. AR 30 (citing AR 516). These activities contradict Plaintiff's testimony that after social outings he must recover for one to three days. The ALJ also noted that Plaintiff "managed" townhouses part-time. AR 31. Plaintiff argues that "managed" is an overstatement and he did not perform maintenance. Dkt. 17 at 7-8. But Plaintiff does not dispute that his duties included "fielding messages for the owners," "holding a master set of keys to be called upon when needed," "show[ing] units," and "checking in new residents." AR 28. Plaintiff had to be available on call to interact with strangers as needed, and there is no indication that he failed in this task. This also suggests greater functioning than Plaintiff testified. Plaintiff's activities were a clear and convincing reason to discount his testimony.

---

[6] The ALJ also cited two instances of inconsistent statements, one of which the Commissioner concedes is erroneous and the other of which the Commissioner concedes is insufficient to undermine Plaintiff's testimony. AR 35; Dkt. 18 at 8-9. Because the ALJ gave other valid reasons, the Court need not address this reason further.

[7] The ALJ in his 2018 decision adopted his 2013 analysis of Plaintiff's testimony. AR 596. Accordingly, the Court reviews this portion of the 2013 ALJ decision.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 10

### 2. Improvement with Treatment

The evidence the ALJ cited showed no more than waxing and waning cycles of mental health. For example, in May 2010 Plaintiff required an entire day of sleep after minimal physical activity but in June 2010 he felt "a great deal better." AR 34. In January 2012 Plaintiff was physically sick from anxiety but in February 2012 his mental health was "much better." AR 34. As the Ninth Circuit has "emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 759 F.3d at 1017. The examples the ALJ cited do not show sustained improvement. The ALJ erred by discounting Plaintiff's testimony based on improvement with treatment.

### 3. Objective Medical Evidence

The ALJ discounted Plaintiff's testimony on the additional ground that it was "inconsistent with the objective medical evidence." AR 35. This was a valid reason, and Plaintiff does not challenge it. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").

Because the ALJ provided the valid reasons of inconsistency with Plaintiff's activities and lack of supporting medical evidence, inclusion of the invalid reason of improvement with treatment was harmless error. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (inclusion of erroneous reasons to discount claimant's testimony was harmless

because "remaining valid reasons supporting the ALJ's determination are not 'relatively minor'"). The Court concludes the ALJ did not err by discounting Plaintiff's testimony.

**D.     RFC**

Plaintiff contends that in 2018 the ALJ found he "suffers from new and increased functional" limitations compared to 2013, and therefore the ALJ erred by failing to include greater restrictions in the 2018 RFC. Dkt. 17 at 15-17.

In both the 2013 and 2018 decisions, when considering whether Plaintiff's impairments met or medically equaled a listed mental impairment at step three, the ALJ assessed "paragraph B" criteria. AR 30-31, 600. Between 2013 and 2018, the paragraph B criteria changed. The ALJ found "moderate" limitations on concentration, persistence, and pace in both 2013 and 2018. AR 30, 600. The other categories were not directly comparable. In 2013, the ALJ found mild limitations in social functioning and in activities of daily living. AR 30-31. In 2018, the ALJ found mild limitations in adapting or managing oneself; and moderate limitations in interacting with others and in understanding, remembering, and applying information. AR 600. The Court rejects Plaintiff's argument that the ALJ's findings were necessarily more severe in 2018 than in 2013, because the categories differed. Even if the 2018 findings were more severe, "the 'paragraph B' criteria are not a[n RFC] assessment… The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." AR 601; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(J)(3) ("If your impairment(s) does not meet or medically equal a listing, we will assess your residual functional capacity"), 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (2012) ("An assessment of your RFC complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities"). The RFC determination need not change because the

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 12

paragraph B determination changes.

The RFC contained extensive mental limitations. Plaintiff was limited to only minimal supervisor contact, incidental and superficial public contact, and proximity to only a few coworkers without any cooperative or team effort. AR 601. He was limited to following short, simple instructions to perform simple, routine tasks requiring little or no judgment, in a predictable work environment with few changes. *Id*. Plaintiff identifies no additional limitation that is required based on the ALJ's paragraph B assessment. An ALJ need only include in the RFC limitations that are supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006).

The Court concludes the ALJ did not err in formulating the RFC.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 9th day of October, 2019.

_____
The Honorable Richard A. Jones
United States District Judge